# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANGEL MENDEZ-CASTRO,** | : | |
| **Petitioner** | : | |
| | : | **No. 1:14-cr-30-1** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent** | : | |

## MEMORANDUM

Before the Court is Petitioner Angel Mendez-Castro ("Petitioner")'s motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 153.) For the reasons that follow, the Court will deny Petitioner's motion.

## I.   BACKGROUND

On January 22, 2014, a grand jury returned an indictment charging Petitioner with conspiracy to distribute over one kilogram of heroin and five kilograms and more of cocaine; aiding and abetting the possession with intent to distribute and distribution of one kilogram and more of heroin and five kilograms and more of cocaine; aiding and abetting the possession, carrying, and use of firearms in furtherance of a drug trafficking conspiracy; and conspiracy to possess, carry, and use a firearm in furtherance of the distribution of heroin and cocaine. (Doc. No. 1.) George H. Matangos ("Attorney Matangos") represented Petitioner, who entered into plea negotiations with the Government, resulting in a plea agreement. (Doc. No. 75.) The agreement called for Petitioner to plead guilty to Count One of the indictment, charging him with conspiracy to distribute heroin and five kilograms and more of cocaine. (Id. ¶ 1.) In the plea agreement, Petitioner and the government stipulated that Petitioner was responsible for five kilograms of cocaine and one kilogram of heroin and that Petitioner would be subject to a two-level increase of the applicable Sentencing Guidelines for involvement of a dangerous weapon; a

two-level increase for making a threat of violence; and a two-level increase for importing controlled substances.  (Id. ¶ 12.)

On January 30, 2015, Petitioner appeared before this Court for a change of plea hearing. During the hearing, counsel for the Government reviewed the Sentencing Guidelines recommendations to which the parties had stipulated.  (Doc. No. 147 at 11.)  Petitioner pled guilty to Count One, and the Court accepted his guilty plea.  (Id. at 20-21.)

The United States Probation Office prepared a Presentence Report ("PSR"), which followed the parties' stipulations regarding applicable Sentencing Guidelines factors.  (Doc. No. 109 ¶¶ 24-27.)  The PSR also noted that Petitioner should receive a four-level increase for being an organizer or leader of criminal activity, and a two-level increase for obstruction of justice. (Id. ¶¶ 29-30.)  As for Petitioner's criminal history, the Probation Office assessed one point for a juvenile adjudication for unlawful delivery of heroin from York County Juvenile Court.  (Id. ¶ 36.)  The PSR noted that on April 17, 2007, Petitioner was adjudicated delinquent and disposition was deferred.  (Id.)  On June 8, 2007, Petitioner was released from the juvenile court's disposition after a determination that "further juvenile court involvement would be unproductive" because Petitioner had pending charges as an adult.  (Id.)  With a total criminal history score of six, Petitioner fell within criminal history category III.  (Id. ¶ 42.)  Attorney Matangos did not object to the criminal history determination.  (See Doc. No. 110.)

The parties appeared before the Court for Petitioner's sentencing on June 16, 2015. (Doc. No. 148.)  The Court noted that the parties had agreed to adjust Petitioner's total offense level to 35, resulting in a Sentencing Guidelines range of 210 to 262 months of imprisonment. (Id. at 2.)  However, the parties recommended that the Court sentence Petitioner "in the guideline range originally contemplated by the parties when presenting the plea agreement to the [C]ourt,

and that guideline range is 168 months to 210 months." (Id. at 3.)  The Court accepted the

recommendation.  (Id.)  Ultimately, the Court sentenced Petitioner to 180 months of

incarceration.  (Id. at 11; Doc. No. 137.)

On July 1, 2015, Petitioner, acting pro se, filed an appeal of this Court's judgment of

conviction.  (Doc. No. 138.)  On appeal, Petitioner argued that his sentence was substantively

unreasonable.  See United States v. Mendez-Castro, 655 F. App'x 115, 116 (3d Cir. 2016).  The

United States Court of Appeals affirmed this Court's judgment of conviction on July 22, 2016.

See id.

On October 13, 2017, Petitioner, through counsel, filed the instant motion to vacate, set

aside, or correct his sentence pursuant to 28 U.S.C. § 2255, raising three claims for relief.  (Doc.

No. 153.)  Specifically, Petitioner asserted the following three claims:

> Ground One:  Petitioner "was deprived of his right to the effective assistance of
> counsel when sentencing counsel failed to object to the assessment
> of a criminal history point for a juvenile charge for which disposition
> was deferred and that was not countable as a result of U.S.S.G.
> § 4A1.2(f), diversionary dispositions";
>
> Ground Two:  Petitioner "was deprived of his right to the effective assistance of
> counsel when sentencing counsel failed to advise [him] that the
> juvenile matter was [expungable] and/or failed to take action to have
> the matter expunged before sentencing";
>
> Ground Three: Petitioner's "sentence should be vacated, and the matter set for a
> new sentencing hearing, as certain York County Court of Common
> Pleas cases are expected to be expunged."

(Id. at 4-6.)  Counsel also filed a supporting brief.  (Doc. No. 153-1.)  The Government filed a

brief in opposition on November 27, 2017.  (Doc. No. 159.)

Petitioner subsequently filed a motion to stay, asking the Court to stay his § 2255

proceedings pending the conclusion of collateral actions in the York County Court of Common

Pleas.  (Doc. No. 160.)  Petitioner asserted that success on those actions could render part of his

§ 2255 motion moot.  (Id.)  The Government concurred in the request for a stay.  (Doc. No. 162.)
In an Order dated December 19, 2017, the Court granted the motion to stay and directed
Petitioner to file quarterly reports regarding the status of the state court proceedings.  (Doc. No.
163.)

In a status report filed on September 25, 2018, Petitioner informed the Court that the
York County Court of Common Pleas had denied his request to expunge his juvenile record and
that, accordingly, his § 2255 proceedings no longer needed to be stayed.  (Doc. No. 166.)
Petitioner also moved to voluntarily dismiss Grounds Two and Three of his § 2255 motion,
indicating that he only wished to proceed on the merits of Ground One.  (Id.)  In an Order dated
October 22, 2018, the Court lifted the stay and noted that Petitioner could file a reply brief.
(Doc. No. 167.)  After receiving an extension of time (Doc. Nos. 169, 170, 171), Petitioner filed
his reply brief (Doc. No. 172).  His § 2255 motion is therefore ripe for resolution.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may file a motion requesting that the
sentencing court vacate, set aside, or correct his sentence on the basis "that the sentence was
imposed in violation of the Constitution or laws of the United States, or that the court was
without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum
authorized by law, or is otherwise subject to collateral attack."  See 28 U.S.C. § 2255(a).
However, Section 2255 does not afford a remedy for all errors that may have been made at trial
or during sentencing.  See United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (citing
United States v. Addonizio, 442 U.S. 178, 185 (1979)).  Rather, Section 2255 is implicated only
when the alleged error raises "a fundamental defect which inherently results in a complete
miscarriage of justice."  See Addonizio, 442 U.S. at 185.  Under the Antiterrorism and Effective

Death Penalty Act ("AELPA"), a petitioner has one year from the time his conviction becomes final to file a Section 2255 motion. 28 U.S.C. § 2244.

In order to establish entitlement to relief, a collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). See George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001). The first Strickland prong requires Petitioner to "establish first that counsel's performance was deficient." See Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). This prong requires Petitioner to show that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. See id. In this way, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. See id. (citing Strickland, 466 U.S. at 688). However, "[t]here is a 'strong presumption' that counsel's performance was reasonable." See id.

Under the second Strickland prong, Petitioner "must demonstrate that he was prejudiced by counsel's errors." See id. This prong requires Petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See id. (quoting Strickland, 466 U.S. at 694). Reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." See id. (quoting Strickland, 466 U.S. at 694).

## III.    DISCUSSION

### A.    Ineffective Assistance of Counsel

As noted above, Petitioner previously indicated that he is voluntarily dismissing Grounds Two and Three set forth in his § 2255 motion. The Court will therefore deem these grounds withdrawn. Accordingly, only Ground One remains before the Court for disposition. In this

ground for relief, Petitioner contends that Attorney Matangos was ineffective for failing to object

to the assessment of a criminal history point for a juvenile charge for which disposition was

deferred and therefore was not countable under § 4A1.2(f) of the Sentencing Guidelines.  (Doc.

No. 153-1 at 9.)  Petitioner contends that counsel's error prejudiced him because, had the Court

known that the proper criminal history score was 5, rather than 6, there is a reasonable

probability that the Court would have imposed a sentence of less than 180 months.  (Id. at 13.)

The Government maintains that Petitioner cannot demonstrate prejudice, as the point did not

affect his criminal history category.  (Doc. No. 159 at 1, 15.)

 The Third Circuit has noted that "familiarity with the structure and basic content of the

[Sentencing] Guidelines . . . has become a necessity for counsel who seek to give effective

representation."  See United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992).  The Sentencing

Guidelines do not exempt all juvenile adjudications from the calculation of a defendant's

criminal history category.  See United States v. Bucaro, 898 F.2d 368, 373 (3d Cir. 1990).  "Not

all juvenile adjudications, however, result in criminal history points, largely because

'[a]ttempting to count every juvenile adjudication would have the potential for creating large

disparities due to the differential availability of records.'"  United States v. Langford, 516 F.3d

205, 209 (3d Cir. 2008) (quoting U.S.S.G. § 4A1.2 cmt. n.7).  Thus, for offenses committed prior

to the age of eighteen, "only those that resulted in adult sentences of imprisonment exceeding

one year and one month, or resulted in imposition of an adult or juvenile sentence or release from

confinement on that sentence within five years of the defendant's commencement of the instant

offense are counted."  U.S.S.G. § 4A1.2 cmt. n.7.

 To determine whether discontinuation of a juvenile adjudication constitutes a "sentence"

for purposes of the Sentencing Guidelines, the Court "must review the operations of the

Pennsylvania juvenile system." See Langford, 516 F.3d at 209. The Langford court set forth an overview of those operations as follows:

> In Pennsylvania, a juvenile delinquency adjudication requires a court to find beyond a reasonable doubt that a child committed acts that would constitute crimes if committed by an adult. See 42 Pa. C.S.A. § 6341(b). Typically, the court then orders a disposition. Completed with the aid of a comprehensive social study and investigation, a disposition may operate as the functional equivalent of an adult sentence. See id. § 6339. However, "[i]f the court finds that the child is not in need of treatment, supervision or rehabilitation it shall dismiss the proceeding and discharge the child from any detention or other restriction theretofore ordered." See id. § 6341(b).

Id. at 209-10. Thus, in Langford, the Third Circuit concluded that the defendant's juvenile adjudication for auto theft should not have been used in the calculation of his criminal history because the juvenile court had discontinued the adjudication. See id. at 210-11.

In the instant matter, the York County Juvenile Court adjudicated Petitioner delinquent for unlawful delivery of heroin, but deferred disposition. (PSR ¶ 36.) Subsequently, Petitioner was released from the jurisdiction of the juvenile court after it was determined that "further juvenile court involvement would be unproductive." (Id.) Thus, like in Langford, the juvenile court discontinued the proceedings. Accordingly, because the discontinuation of adjudication proceedings should not have been considered to be a sentence for purposes of § 4A1.2, Petitioner should not have received a criminal history point for this proceeding. See Langford, 516 F.3d at 210-11.

In light of the foregoing, the Court presumes, for purposes of these proceedings, that Petitioner has established that Attorney Matangos' performance was deficient for failing to object to the assessment of one criminal history point for the discontinued juvenile adjudication. See Jermyn, 266 F.3d at 282. Petitioner, however, must also establish prejudice by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." See id. (quoting Strickland, 466 U.S. at 694). In the sentencing context, Petitioner must demonstrate a reasonable probability that "the deficient performance affected [his] sentence." See United States v. Hankerson, 496 F.3d 303, 310 (3d Cir. 2007) (citing Glover v. United States, 531 U.S. 198, 203-04 (2001)). A "totally speculative" harm does not demonstrate prejudice. See Baker v. Barbo, 177 F.3d 149, 154 (3d Cir. 1999).

Petitioner concedes that the subtraction of one criminal history point would not have changed his criminal history category or the agreed-upon Sentencing Guidelines range of 168 to 210 months of incarceration. (Doc. No. 153-1 at 13; Doc. No. 172 at 3.) Rather, Petitioner argues that "a reasonable probability exists that, had the district court been aware that his criminal history score was five (and not six), it would have imposed a sentence of less than 180 months and as little as 168 months." (Doc. No. 153-1 at 13.) The Court agrees with the Government, however, that Petitioner cannot establish prejudice from any deficient performance rendered by Attorney Matangos given that Petitioner's agreed-upon Sentencing Guidelines range would not have differed with the subtraction of that one point. See United States v. Isaac, 655 F.3d 148, 158 (3d Cir. 2011) (concluding that, although the district court erred by attributing an extra criminal history point to the defendant, the error was harmless because it did not affect the defendant's criminal history category and "the same Guideline range would have applied").

Moreover, Petitioner's belief that the Court would have imposed a sentence less than 180 months is "totally speculative" on his part. See Baker, 177 F.3d at 154. Prior to imposing sentence, the Court indicated that while "there [was] hardly a defendant who's come before the [C]ourt with a worse personal background," it was "clear that [Petitioner] became a very violent, crafty, drug kingpin." (Doc. No. 148 at 10.) After weighing Petitioner's background with his

conduct, the Court stated that it was "clear . . . from the conduct of [Petitioner] that he would certainly be deserving of a sentence at the high end of the guideline range." (Id. at 11.) The Court, however, felt that "at some point there's a needless piling on." (Id.) Thus, the Court concluded that "a sentence at the middle of that guideline range as recommended by counsel will promote respect for the law, justly punish, adequately deter, and reflect the seriousness of the offense that brings [Petitioner] before the [C]ourt." (Id.) Given this, Petitioner has failed to demonstrate a reasonable probability that, but for counsel's error, the result of his sentencing would have been different.

## B.       Evidentiary Hearing

Section 2255(b) advises that a petitioner may be entitled to a hearing on his motion. The decision to hold a hearing is wholly within the discretion of the district court. See Gov't of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989). Where the record affirmatively indicates that a petitioner's claim for relief is without merit, the claim may be decided on the record without a hearing. See Gov't of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985). Here, as discussed above, the Court finds that "the motion and files and records of this case show conclusively that the movant is not entitled to relief." See United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005) (quoting Forte, 865 F.2d at 62). Accordingly, the Court finds no reason to hold an evidentiary hearing in this matter.

## C.       Certificate of Appealability

In proceedings brought under Section 2255, a petitioner cannot appeal to the circuit court unless a certificate of appealability ("COA") has been issued. A court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). In other words, a COA should not issue unless "reasonable jurists would

find the district court's assessment of the constitutional claims debatable or wrong." <u>See</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). The Court finds that reasonable jurists would not disagree with the Court's assessment of Petitioner's claim. As discussed more fully above, The Court concludes that Petitioner's claim of ineffective assistance is meritless.

## V.  CONCLUSION

For the foregoing reasons, the Court will deem Grounds Two and Three of Petitioner's § 2255 motion withdrawn. The Court will deny Petitioner's § 2255 motion because Petitioner has not demonstrated that he is entitled to relief with respect to Ground One. Accordingly, the Court will not conduct an evidentiary hearing. Furthermore, the Court will not issue a COA. An appropriate Order follows.